IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. JOSEPH MAPP (#B67260), | )<br>)<br>) |
| Petitioner, | )<br>)<br>) Case No. 97 C 3002 |
| v. | )<br>) |
| NEDRA CHANDLER,[1] Warden, Dixon Correctional Center, | )<br>)<br>) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Following a jury trial in the Circuit Court of Cook County, the jury found Petitioner Joseph Mapp guilty of first degree murder and armed robbery. The trial court then sentenced Mapp to concurrent prison terms of 55 years for the murder and 25 years for the armed robbery. Mapp, a prisoner in state custody, filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1).[2] For the reasons discussed below, the Court denies Mapp's petition.

### BACKGROUND

Mapp does not challenge the statement of facts set forth in the Illinois appellate court's opinions on direct and post-conviction appeal, and thus those facts are presumed correct for

---

[1] Nedra Chandler is currently the Warden at Dixon Correctional Center and is thus the proper Respondent in this habeas action. *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. The Court, therefore, substitutes Chandler as the Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] On January 27, 2005, Mapp filed a motion to amend his habeas petition. (R. 20-1.) The Court denies Mapp's motion because his amended habeas petition filed November 24, 2004, contains all of the claims brought in this newly amended petition.

purposes of the Court's review. *See* 28 U.S.C. § 2254(e)(1); *Ward v. Hinsley*, 377 F.3d 719, 721 (7th Cir. 2004). The Court, therefore, adopts the underlying facts set forth by the Appellate Court of Illinois, First Judicial District. *See People v. Mapp*, 283 Ill.App. 3d 979, 219 Ill.Dec.174, 670 N.E.2d 852 (1st Dist. 1996); *People v. Mapp*, Case No. 1-02-1175 (1st Dist. March 9, 2004) (unpublished order).

## I. Trial Evidence

### A. Mapp's Statement to Police

After police officers arrested Mapp, he made a statement to the police that was read to the jury. *People v. Mapp*, 283 Ill.App. 3d 979, 981, 219 Ill.Dec.174, 670 N.E.2d 852 (1st Dist. 1996). According to Mapp's statement, a few nights before August 12, 1993, Mapp, Joseph Martin, and Joseph Richardson were riding around in Mapp's mother's Isuzu Rodeo truck. *Id.* Martin stated that the eventual victim, Larry Shelton, owed him money. *Id.* Mapp, Martin, and Joseph planned to point a gun at Shelton and ask for the money, thinking Shelton would not refuse. *Id.* Mapp suggested they use masks to hide their identities. *Id.*

On August 11, 1993, Mapp picked up Martin to drive around in the Isuzu truck. *Id.* At that time, Martin had a Tech 9 gun with him. *Id.* When they saw Shelton in his van, they decided to carry out their plan to ask Shelton for the money while they pointed a gun at him. *Id.* Toward that end, Martin gave Mapp the Tech 9 gun that was loaded. *Id.* They put on their masks and Mapp borrowed Richardson's jacket to hide his hair. *Id.* Then, Mapp and Martin left the truck and approached Shelton, who was walking with his family. *Id.* Martin shot Shelton and Shelton dropped everything he was carrying. *Id.* Mapp approached Shelton with the Tech 9 gun and picked up two key chains Shelton had dropped. *Id.* Mapp also shoved Shelton in the

2

back after which Martin shot Shelton again. *Id.* At that time, Mapp stepped back to avoid getting shot himself. *Id.* After Martin fired several more shots, Mapp and Martin ran off. *Id.* As they fled, they threw their masks and jackets away. *Id.* Richardson saw Martin and Mapp fleeing and picked them up in the Isuzu truck. *Id.* Mapp and Martin suggested that the guns be wiped to destroy fingerprints to which Richardson agreed. *Id.* Mapp then went to his girlfriend's house. *Id.*

### B.     Other Trial Evidence

Other trial evidence included eyewitness testimony from Shelton's teenage daughters, Robin and LaDonna, and Shelton's fiancee, Stephanie Turnbull. *Id.* These witnesses, Shelton, and two other children were returning home from an evening outing. *Id.* Turnbull was carrying her two-month-old son. *Id.* They had parked on the street in front of 3500 S. Lake Park in Chicago, Illinois. *Id.* Everyone but Turnbull walked toward the building while Turnbull locked their van. *Id.* She then followed the others. *Id.*

The eyewitnesses also testified that two men, who were carrying guns and wearing masks, approached Shelton. *Id.* at 982. Furthermore, the eyewitnesses saw that one man had a silver gun and the other had black gun. *Id.* Later trial testimony corroborated that Martin had the silver gun and Mapp had the black gun. *Id.* LaDonna testified that she had seen Martin, Mapp, and Richardson in the parking lot just before the shooting incident and that she saw the blue Isuzu Rodeo truck. *Id.* Turnbull testified that while the man with the silver gun started shooting, the man with the black gun shoved Shelton, searched his pockets, and grabbed a chain from his neck. *Id.* The man with black gun also pointed the gun at Turnbull and the baby. *Id.* Turnbull further testified that the two men ran past her, taking off their masks. *Id.* In the end, Shelton died from

3

multiple gunshot wounds. *Id.*

## C. Mapp's Trial Testimony

At trial, Mapp testified that he did not plan to rob anyone. *Id.* He also testified that he cooperated with the police because he believed that if he implicated Martin, the police would return his mother's Isuzu truck and let him go. *Id.* Although there was evidence in the record to the contrary, Mapp claimed that the Assistant State's Attorney did not read him the entire summary of his statement and that he did not read it himself. *Id.* Mapp specifically denied hearing anything that implicated him as an accomplice, although he admitted to hearing the State's Attorney read every sentence that did not implicate him in the crimes. *Id.*

In addition, Mapp testified that on the night of the shooting, Martin, Richardson, and he set out to find a couple of girls Mapp knew at 3500 S. Lake Park. *Id.* Richardson left them there and took the Isuzu truck to find his own girlfriend. *Id.* Also, Mapp testified that when Martin and he were walking toward the building, Martin pulled out a gun and asked Mapp to hold it for a second. *Id.* Mapp claims that did not know Martin had a gun or why he had a gun. *Id.* Mapp testified that once Martin put on a mask and ran up to Shelton, Mapp followed to tell Martin to stop. *Id.* After Martin fired his gun, Shelton dropped his keys at which point Mapp picked up the keys to give them back to Shelton. *Id.* Martin continued to shoot Shelton so Mapp got out of the way because he could not stop Martin. *Id.* Mapp further testified that after the shooting, he ran off and Martin followed him. *Id.* Mapp then threw the gun and keys away and took off his jacket because Martin told him to so. *Id.*

There was further trial evidence that when the police took Mapp into custody, Mapp told the police that he knew nothing about the killing. *Id.* Mapp testified at trial that he told the

police this because he did not know Shelton was dead. *Id.* At one point, Mapp said the police did not beat him, but then later stated that one detective slapped him a couple of times. *Id.* Further, Mapp claimed that the Assistant State's Attorney told him if he gave a statement, he would be able to go. *Id.*

### D. Rebuttal Testimony

During rebuttal, the State's witnesses said no one made any promises in exchange for Mapp's statement and that the Assistant State's Attorney read Mapp's entire statement to him. *Id.* Further, testimony indicated that the police did not hit Mapp. *Id.*

## II. Procedural Background

Following a jury trial in the Circuit Court of Cook County, the jury found Mapp guilty of first degree murder and armed robbery. The trial court sentenced Mapp to concurrent prison terms of 55 years for the murder and 25 years for the armed robbery.

### A. State Court Appeals

On direct appeal, Mapp argued (1) that the prosecution violated Illinois Supreme Court Rule 234 when it questioned potential jurors regarding the law of accountability, (2) that the prosecutor engaged in misconduct during closing arguments, and (3) that his sentence was excessive. (R. 19-1, Rules Governing Section 2254 Cases, Rule 5, Ex. A.)[3] On September 23, 1996, the Appellate Court of Illinois, First Judicial Circuit, affirmed Mapp's conviction and sentence. (Ex. A). Mapp then filed a petition for leave to appeal to the Illinois Supreme Court in which he raised a single claim – that the prosecution violated Illinois Supreme Court Rule 234

---

[3] The Court will cite to the individual exhibits in Respondent's Rule 5 materials when referring to the state court proceedings.

when it questioned potential jurors. (Ex. B.) On January 29, 1997, the Illinois Supreme Court denied Mapp's petition for leave to appeal. (Ex. C.)

On June 27, 1997, Mapp filed a *pro se* petition for post-conviction relief in the Circuit Court of Cook County pursuant to the Illinois Post Conviction Hearing Act. *See* 725 ILCS 5/122-1. Mapp brought the following claims in his post-conviction petition (1) the State failed to disclose certain evidence, (2) the trial court erred in allowing the State to use a diagram to visualize witnesses testimony because later witnesses could see where earlier witnesses had marked the diagram and conformed their testimony accordingly, (3) he was deprived a proper jury trial because some jurors allegedly fell asleep during trial, (4) the State failed to prove the offense of armed robbery, and (5) his appellate counsel rendered ineffective assistance of counsel by failing to raise these issues on direct appeal, along with the issue that trial counsel failed to file a post-sentencing motion. (Ex. D.) In September of 1997, the State filed a motion to dismiss Mapp's post-conviction petition. (Ex. E.)

In July of 2000, appointed counsel filed a supplemental post-conviction petition alleging that (1) trial counsel was constitutionally ineffective for failing to investigate State witnesses or subpoena certain evidence, and (2) appellate counsel was constitutionally ineffective for not raising trial counsel's failure to interview witnesses. (Ex. F.) In February of 2002, appointed counsel filed another supplemental post-conviction petition asserting that trial counsel rendered ineffective assistance of counsel by failing to (1) request a *voir dire* of jurors who had allegedly been sleeping or, in the alternative, a mistrial, and (2) present available witnesses in mitigation at the sentencing hearing. (Ex. H.)

After conducting an evidentiary hearing, the post-conviction court dismissed Mapp's

6

petition for post-conviction relief. (Ex. I.) Mapp appealed contending that trial counsel rendered ineffective assistance of counsel when he failed to (1) request *voir dire*, or in the alternative, a mistrial because some jurors were allegedly asleep, and (2) present character witnesses in mitigation at Mapp's sentencing hearing. (Ex. J.) On March 9, 2004, the Appellate Court of Illinois, First Judicial District, affirmed the trial court's denial of Mapp's post-conviction petition. (Ex. L.) Mapp then filed a petition for leave to appeal to the Illinois Supreme Court asserting that (1) trial counsel was ineffective for failing to request a *voir dire* of the jurors, or alternatively, a mistrial due to jurors allegedly sleeping, and (2) trial counsel was ineffective for failing to call available witnesses on behalf of Mapp during sentencing. (Ex. M.) On October 6, 2004, the Illinois Supreme Court denied Mapp's petition for leave to appeal. (Ex. N.)

### B.   Federal Habeas Petition

In April of 1997, Mapp filed his original petition for habeas corpus in federal district court. On June 9, 1997, the district court dismissed the habeas corpus petition with leave to reinstate within 60 days of the conclusion of the post-conviction petition pending in Illinois state court. On November 24, 2004, Mapp sought to reinstate his habeas petition, which the district court granted on December 10, 2004.[4]

Construing Mapp's *pro se* habeas petition liberally, *see Calhoun v. DeTella*, 319 F.3d 936, 943 (7th Cir. 2003), he asserts the following claims (1) the State violated his Sixth Amendment rights when the prosecutor improperly questioned prospective members of the jury during *voir dire*, (2) the State violated the Fourteenth Amendment when the prosecutor talked

---

[4] After the Honorable George M. Marovich, District Judge, granted Mapp's motion to reinstate his habeas corpus petition, Mapp's case was reassigned to this Court on December 17, 2004.

7

about the victim during closing arguments, (3) the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it withheld evidence favorable to him, (4) the State violated *Brady* when it withheld addresses of two of its three eyewitnesses, (5) the trial court violated Mapp's Sixth Amendment rights when it overruled Mapp's objections that some of the jurors were allegedly sleeping, (6) trial counsel was ineffective for failing to request that the trial court *voir dire* the jurors regarding their alleged sleeping, (7) the trial court violated the Fourteenth Amendment when it allowed the State to mark photographs and diagrams during trial, (8) the State violated Mapp's Fifth Amendment right against self-incrimination, (9) the trial court violated Mapp's Fourteenth Amendment rights because it allowed the State to reopen its case-in-chief to introduce exhibits, (10) trial counsel was ineffective for failing to call witnesses on behalf of Mapp during sentencing, (11) trial counsel was ineffective for failing to file a motion to reduce Mapp's sentence, (12) appellate counsel was ineffective for failing to raise Mapp's claims of ineffective assistance of trial counsel, (13) Mapp's sentence was excessive in violation of the Eighth Amendment, and (14) trial counsel was ineffective for failing to obtain two witnesses' addresses and failed to adequately prepare for cross-examining those witnesses.

## LEGAL STANDARDS

### I. Habeas Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of law clearly established by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court

law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405; *Owens v. Frank*, 394 F.3d 490, 496-97 (7th Cir. 2005).

Under the "unreasonable application" prong under Section 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams*, 529 U.S. at 407; *Owens*, 394 F.3d at 497. To be considered "unreasonable" under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (state court decision must be minimally consistent with facts and circumstances of the case).

## II.  Procedural Default

A petitioner's failure to present a constitutional claim to the highest state court to which he may appeal in the manner required by state law results in a procedural default preventing a federal court from deciding the claim on collateral review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (petitioner must give state court full and fair opportunity to resolve federal constitutional claims before federal habeas court can review them). A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law, or by showing that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

## ANALYSIS

### I. Procedurally Defaulted Claims

Mapp has procedurally defaulted eleven of his fourteen habeas claims. First, Mapp has brought six of his habeas claims for the first time in his habeas petition to the Court. Because he has failed to give the Illinois courts the full and fair opportunity to resolve these constitutional claims, he has procedurally defaulted them. *See Boerckel*, 526 U.S. at 845; *see, e.g., Jones v. Chrans*, 187 F.Supp.2d 993, 1001 (N.D.Ill. 2002) (habeas petitioner procedurally defaults claims raised for first time in federal court). These claims include: (1) Mapp's two *Brady* claims; (2) that the trial court violated his Sixth Amendment rights when it overruled Mapp's objections that some of the jurors were allegedly sleeping; (3) that the State violated his Fifth Amendment right against self-incrimination; (4) that the trial court violated his Fourteenth Amendment rights because it allowed the State to reopen its case-in-chief to introduce exhibits; and (5) that trial counsel was constitutionally ineffective for failing to file a motion to reduce his sentence.

Next, Mapp procedurally defaulted his prosecutorial misconduct claim because he did not present this claim to the Illinois Supreme Court in his petition for leave to appeal. *See Boerckel*, 526 U.S. at 848 (petitioner's failure to bring claims in petition for leave to appeal results in procedural default of those claims). Similarly, Mapp procedurally defaulted his claim that his sentence was excessive in violation of the Eighth Amendment because he failed to present this claim in his petition for leave to appeal to the Illinois Supreme Court. *See id.*

Further, Mapp procedurally defaulted his claim that his appellate counsel was constitutionally ineffective for failing to raise his trial counsel's ineffective assistance because he did not appeal this post-conviction claim to the Illinois appellate court. *See Bell v. Pierson*, 267

10

F.3d 544, 555 (7th Cir. 2001) (habeas petitioner must "fairly present" federal issue to the state courts). Likewise, Mapp defaulted his claim that trial counsel was ineffective for failing to obtain two witnesses' addresses and for not adequately preparing to cross-examine those witnesses because he did not appeal the claim to the Illinois appellate court. *See id.*

Finally, Mapp procedurally defaulted his claim that the trial court violated his Fourteenth Amendment rights when it allowed the State to mark photographs and diagrams during trial because he failed to appeal this post-conviction claim to the Illinois appellate court or include the claim in his petition for leave to appeal to the Illinois Supreme Court. *See Boerckel*, 526 U.S. at 848; *Bell*, 267 F.3d at 555.

Mapp does not explain why he did not present these issues in his direct appeal, post-conviction appeal, or petitions for leave to appeal, and thus he has failed to demonstrate cause for defaulting these claims. *See Coleman*, 501 U.S. at 750. In addition, he has not argued or established the "fundamental miscarriage of justice" exception. *Id.* The Court, therefore, is procedurally barred from considering the merits of claims 2, 3, 4, 5, 7, 8, 9, 11, 12, 13, 14. *See Todd v. Schomig*, 283 F.3d 842, 848-49 (7th Cir. 2002).

## II.  Improper Questions During Voir Dire – Claim 1

In his first habeas claim, Mapp contends that the State violated his Sixth and Fourteenth Amendment rights because the prosecutor improperly questioned prospective members of the jury during *voir dire* in violation of Illinois Supreme Court Rule 234. The Supreme Court Rule states:

> The court shall conduct the voir dire examination of prospective jurors by putting to them questions it thinks appropriate touching upon their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, and

11

> shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time depending upon the length of examination by the court, the complexity of the case, and the nature and extent of the damages. ***Questions shall not directly or indirectly concern matters of law or instructions.*** The court shall acquaint prospective jurors with the general duties and responsibilities of jurors.

S.Ct. Rule 234, Voir Dire Examination of Jurors and Cautionary Instructions (emphasis added).

During *voir dire,* the prosecution discussed the felony murder charges and the legal theory of accountability or criminal responsibility because the actual shooter in this case, Joseph Martin, had been killed shortly after the incident at issue. *See People v. Mapp*, 283 Ill.App. 3d 979, 983, 219 Ill.Dec.174, 670 N.E.2d 852 (1st Dist. 1996). After a lengthy discussion of Illinois precedent involving *voir dire* questions pertaining to accountability, the Illinois appellate court concluded: "Given these decisions, we conclude, despite the proscription of Rule 234, that potential jurors may be given a brief and fair summary of accountability principles and then be asked if they could properly apply those principles to the evidence." *Id.* at 989.

Here, Respondent argues that Mapp's habeas claim based on Illinois Supreme Court Rule 234 is purely a matter of state law, and thus Mapp's claim is not cognizable on habeas review. The Court agrees. Mapp is asking the Court to review the Illinois appellate court's decision concerning a matter of state law. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). In other words, a claim that is not cognizable on habeas review does not present a federal issue. *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004).

Nonetheless, as the *Perruquet* Court instructs, defendants are entitled to a fair trial, "but

only if the state court committed an error so serious as to render it likely that an innocent person was convicted can the error be described as a deprivation of due process." *Id.* at 510-11. Mapp does not assert, nor has he established, that the prosecution's questioning at *voir dire* deprived him of his due process right to a fair trial. Accordingly, the Court concludes that Mapp's claim based on Illinois Supreme Court Rule 234 is not cognizable on federal habeas review.

### III. Ineffective Assistance of Counsel – Claims 6 and 10

Next, Mapp contends that his trial attorney provided constitutionally ineffective assistance of counsel. To establish ineffective assistance of counsel, Mapp must show (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 694. If a defendant fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other prong. *See Strickland*, 466 U.S. at 697.

With respect to the first prong, a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and quotations omitted). Under the *Strickland* prejudice prong, Mapp must establish prejudice by a "reasonable probability." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

#### A. Failure to Request Voir Dire of Jurors or Mistrial

First, Mapp contends that his trial counsel was constitutionally ineffective for failing to

13

request that the trial court *voir dire* jurors regarding their alleged sleeping. On appeal, after discussing the appropriate standard under *Strickland,* the Illinois appellate court articulated:

> Here, trial counsel timely indicated to the trial court that some of the jurors appeared to have trouble staying awake during the testimony. The trial court acknowledged that it had seen there was a closing of eyes but found that it was only a temporary thing, which the court addressed by having the jury stand up each time. In denying defendant's post-trial motion, the court found in relevant part that the jurors were trying to stay awake, and they did stay awake, and that the court observed the jury to be paying attention. In short, the trial court found that the jurors were not sleeping and that it had dealt sufficiently with any incipient signs of inattentiveness. Given the unlikeliness of the trial court changing its findings, trial counsel's decision not to request *voir dire* or a mistrial did not adversely affect the outcome of the trial; that is, defendant was not prejudiced by the decision.

*People v. Mapp,* Case No. 1-02-1175, at 5 (quotations omitted).

The Court concludes that the Illinois appellate court's decision is minimally consistent with the facts and circumstances of this case, and thus a reasonable application of *Strickland. See Conner,* 375 F.3d at 649. The appellate court discussed how the trial court handled the jurors who had trouble staying awake after defense counsel alerted the trial court to the situation. In this context, the Illinois appellate court concluded that Mapp was not prejudiced by his counsel's failure to request a *voir dire* or mistrial after the trial court remedied the juror situation. In any event, although Mapp challenges the Illinois appellate court's ruling, he has not explained why the court's decision was objectively unreasonable or contrary to clearly established Supreme Court law. As such, Mapp has failed in his burden of establishing that the Illinois court's decision was contrary to or an unreasonable application of *Strickland. See Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2003) (per curiam).

### B. Failure to Call Witnesses at Sentencing

Second, Mapp contends that his trial counsel provided constitutionally ineffective

assistance of counsel because he failed to call available witnesses who would have testified on his behalf at sentencing. The Illinois appellate court, applying the *Strickland* standard, concluded:

> Here, trial counsel could reasonably conclude as a matter of strategy that character evidence from three of defendant's closest relatives – his mother, sister, and grandmother – would be of little weight in persuading the court of his rehabilitative potential. More importantly, we find on this record that trial counsel conducted meaningful adversarial testing of the State's case at sentencing. Trial counsel argued in mitigation that defendant had almost no criminal record (one sentence of supervision in 1991), that he had not fired his weapon during the instant offense, and that, based on the information in the presentence investigation report, defendant could be rehabilitated. Trial counsel also amended the presentence investigation report to reflect that defendant graduated from high school and objected to the State's argument that defendant had admitted to being a gang member, the admission being subject to a *motion in limine*. We find that defendant was not prejudiced by counsel's conduct, that there was no reasonable probability that the sentence would have been different.

*People v. Mapp*, Case No. 1-02-1175, at 7-8 (citation omitted).

Again, the Court concludes that the Illinois appellate court's decision is minimally consistent with the facts and circumstances of this case, and thus a reasonable application of *Strickland*. *See Conner*, 375 F.3d at 649. In other words, the Court would be hard-pressed to conclude that the appellate court's decision was "well outside the boundaries of permissible differences of opinion." *See Hardaway*, 302 F.3d at 762. The Illinois court discussed trial counsel's performance at sentencing, namely, that counsel argued in mitigation that Mapp had almost no criminal record, was not the shooter in the instant offense, and that Mapp's presentence report recommended that he could be rehabilitated. Further, Mapp's counsel amended the presentence report and challenged the State's argument concerning Mapp's alleged gang membership. In this context, the appellate court recognized that counsel's failure to present the witnesses at sentencing was a matter of trial strategy based on the conclusion that the

15

witnesses' testimony would be of little weight in persuading the court of Mapp's rehabilitative potential.

There is a strong presumption that an attorney's decisions based on trial strategy are reasonable. *Strickland* 466 U.S. at 689-90 ("There are countless ways to provide effective assistance in any given case."). Mapp has not overcome the presumption that his counsel's actions were sound trial strategy. Specifically, Mapp offers no explanation as to why his attorney's tactical choices constitute a deficient performance under *Strickland*. Without more, the Court is unwilling to conclude that the Illinois appellate court unreasonably applied *Strickland* to the facts of this case.

In sum, because the Court concludes that the Illinois appellate court did not clearly err in applying *Strickland*, the Court denies Mapp's ineffective assistance of counsel claims. *See Murrell v. Frank*, 332 F.3d 1102, 1111-12 (7th Cir. 2003)(federal court obligated to deny writ, as long as state appellate court took constitutional standard seriously and produced answer within range of defensible positions); *see also Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997) (because *Strickland* inquiry is balancing test rather than bright-line rule, only clear error in applying *Strickland* supports writ).

## CONCLUSION

For these reasons, the Court denies Mapp's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1).

Dated: February 10, 2005

**ENTERED:**

_____
**AMY J. ST. EVE**
**United States District Judge**